# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK RICHARD WELLS,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant.<br>_____/ | Case No. 1:17-cv-00078-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>**(Doc. 1)** |

On December 11, 2015, Plaintiff Mark Richard Wells ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income. (Doc. 1.) Plaintiff filed his Motion for Summary Judgment ("Plaintiff's Motion") on July 27, 2016, (Doc. 13), and Defendant filed their Cross-Motion for Summary Judgment ("Defendant's Motion") on October 28, 2016, (Doc. 16). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.[1]

For the reasons provided herein, the Court DENIES Plaintiff's Motion, (Doc. 13), GRANTS Defendant's Motion, (Doc. 16), and AFFIRMS the final decision of the Commissioner.

---
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8 & 9.)

# I. BACKGROUND

The following includes the pertinent medical and procedural background for this matter. Plaintiff was born on March 2, 1969, and is currently 48 years old. (Administrative Record ("AR") 215.)

On November 26, 2013, Plaintiff filed initial claims for disability insurance benefits and supplemental security income. (*See* AR 215–28.) In his claims, Plaintiff alleges that he became disabled on October 28, 2013. (*See* AR 215 & 219.) Plaintiff stated that the following conditions limit his ability to work: (1) chronic leg and feet swelling, pain, and numbness, (2) shortness of breath, chest pain, and dizziness, (3) high blood pressure, (4) diabetes, (5) hypertension, (6) fluid that weeps out of legs when the legs are swollen, (7) high cholesterol, and (8) obstructive sleep apnea. (AR 241.)

In a summary of past earnings, Plaintiff reported receiving between $10,900 and $33,700 in earnings per year between 1997 and 2004. (*See* AR 231.) However, Plaintiff reported that his earnings dropped precipitously after 2004. (*See* AR 231 (providing that Plaintiff earned $0 in 2005, $1,224.00 in 2006, $0 in 2007, $0 in 2008, $3,652.04 in 2009, $5,849.21 in 2010, $3,079.15 in 2011, $276.00 in 2012, and $1,543 in 2013).)

The Social Security Administration denied Plaintiff's claims initially on May 9, 2014, (*see* AR 126–35), and again on reconsideration on July 25, 2014, (*see* AR 141–52). Plaintiff then requested a hearing before an administrative law judge ("ALJ") on August 26, 2014. (AR 153–55.) On April 8, 2014, the ALJ held a hearing regarding Plaintiff's claims (the "Hearing"). (*See* AR 28–71.)

In a decision dated June 1, 2015, the ALJ found that Plaintiff was not disabled. (*See* AR 11–27.) In the decision, the ALJ conducted the five-step sequential evaluation analysis set forth in 20 C.F.R. § 416.920. (*See* AR 11–22.) At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since . . . the alleged onset date." (AR 13.) At step two, the ALJ found that Plaintiff "has the following severe impairments: diabetes mellitus, essential hypertension, obesity, edema in the lower extremity, chronic venous insufficiency, osteoarthritis in

the knees bilaterally, and depressive disorder not otherwise specified with anxious features." (AR 14.)

At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (AR 14.) The ALJ noted the following regarding Plaintiff's activities of daily living during the ALJ's step-three analysis:

> In activities of daily living, [Plaintiff] has mild restriction. [Plaintiff] reported activities of daily [sic] such as needing no help with bathing, dressing, and grooming, and having adequate motivation for them. He also reported that he could travel alone, manage money, prepare food for himself, and take his children to and from school. He spends the day mostly at home, sleeping, watching television, and doing a little yard work . . . .

(AR 14.)

The ALJ next found that Plaintiff has the residual functional capacity ("RFC") "to perform light work," with certain restrictions. (AR 15.) During the course of the RFC analysis, the ALJ noted the following regarding Plaintiff's allegations of pain and limitations:

> [Plaintiff] alleged he was unable to work due to physical and mental conditions, including chronic leg and feet swelling, pain, and numbness, as well as shortness of breath, chest pain, dizziness, diabetes, hypertension, high cholesterol, obstructive sleep apnea, depression, and fluid that weeps out of the legs when swollen . . . . [Plaintiff] completed an [e]xertional [q]uestionnaire dated February 5, 2014 . . . , and reported that he has a hard time picking up his 6 year old child, his back muscles will pull, and his legs and feet will swell up. He also stated that he was able to drive 2-3 hours, tries to rake leaves and water plants for about 2-3 hours, and sometimes uses a cane when his feet swell.

(AR 16.) The ALJ then found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 16.) The ALJ also engaged in an extensive discussion regarding the evidence of Plaintiff's physical and mental impairments. (*See* AR 16–19.) Additionally, the ALJ stated the following in the RFC analysis regarding Plaintiff's credibility:

> As for [Plaintiff's] credibility, [the ALJ] find[s] the allegations not fully credible. He described daily activities that are not limited to the extent one would expect,

given the complaints of disabling symptoms and limitations. [Plaintiff] reported activities of daily [sic] such as needing no help with bathing, dressing, and grooming, and having adequate motivation for them. He also reported that he could travel alone, manage money, prepare food for himself, and take his children to and from school. He spends the day mostly at home, sleeping, watching television, and doing a little yard work . . . .

[Plaintiff's] credibility is further undermined by the diagnostic and other objective medical evidence, which failed to show a physiological basis for the extreme pain and limitation alleged. There was no history of hospitalizations, surgeries, complicated medication regimen, therapy, or any other extraordinary treatment commiserate with the alleged intensity, duration, frequency and purportedly limiting effects of his symptoms during the relevant period. Furthermore, there were no psychiatric hospitalizations, no history of suicide attempts, no history of outpatient treatment, no history of psychotherapy, and no history of psychosis or manic episodes.

[The ALJ] also considered [Plaintiff's] work history in assessing his credibility . . . . The evidence of record raises a question as to whether [Plaintiff's] unemployment since the alleged onset of disability was actually due to his medical condition. A review of [Plaintiff's] work history shows that [Plaintiff] worked 7 years at substantial gainful activity levels within the past relevant 15 years, but had no years at substantial gainful activity levels in the last 8 years. Moreover, [Plaintiff] reported that part of the reason he stopped working was because his business went bankrupt.

. . .

The medical evidence of record does not support the extent of [Plaintiff's] subjective complaints and his credibility is weakened because of inconsistent and unsupported statements.

(AR 19–20.)

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." (AR 20.) Finally, at step five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 21.) Ultimately, the ALJ found that Plaintiff "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (AR 22.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 7.) On October 21, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1–6.)

Plaintiff then filed the Complaint in this Court on December 11, 2015. (Doc. 1.) Plaintiff filed Plaintiff's Motion on July 27, 2016, (Doc. 13), and Defendant filed Defendant's Motion on October 28, 2016, (Doc. 16). To date, Plaintiff has not filed a reply in support of Plaintiff's Motion. As such, the briefing in this case is complete and this matter is ready for disposition.

## II. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process"); *id.* § 416.920(a)(4) (same). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when

the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## III. DISCUSSION

Plaintiff argues that the ALJ erred by finding that Plaintiff's allegations regarding his limitations were not credible. (*See* Doc. 13 at 7–15.) As discussed below, the Court finds that substantial evidence supports the ALJ's credibility determination and affirms the ALJ's decision.

### A. Overview of Analysis

The ALJ determines a claimant's RFC before step four of the sequential evaluation analysis. *See, e.g.*, 20 C.F.R. §§ 404.1520(e) & 416.920(e). A claimant's RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* §§ 404.1545(a)(1) & 416.945(a)(1). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record . . . ." *Robbins*, 466 F.3d at 883. "The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence . . . ." *Jenkins v. Colvin*, Case No. 1:15-cv-01135-SKO, 2016 WL 4126707, at *6 (E.D. Cal. Aug. 2, 2016) (citing *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001)). Additionally, "[t]he ALJ can . . . decide what weight to give to what evidence as long

as the ALJ's reasoning is free of legal error and is based on substantial evidence." *Tremayne v. Astrue*, No. CIV 08–2795 EFB, 2010 WL 1266850, at *12 (E.D. Cal. Mar. 29, 2010) (citing *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)).

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). "The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* (alterations in original) (quoting *Smolen*, 80 F.3d at 1282); *cf. Reddick*, 157 F.3d at 722 ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." (citing *Bunnell*, 947 F.2d at 343)). Additionally, a claimant is not required to "produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1282).

In this case, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 16.) As such, the first step in this credibility analysis is satisfied.

As to the second step, the ALJ did not reference any evidence of malingering. (*See* AR 16–20.) Thus, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281); *see, e.g.*, *Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an

applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." (citation omitted)). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345–46).

The clear and convincing standard is "not an easy requirement to meet" and it "is the most demanding [standard] required in Social Security cases." *Garrison*, 759 F.3d at 1015 (citation omitted). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see, e.g.*, *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993))); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

The ALJ in the present matter found that Plaintiff's "allegations" were "not fully credible." (AR 19.) The ALJ provided the following four reasons for this finding: (1) Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," (2) Plaintiff's work record, (3) Plaintiff's conservative treatment history, and (4) "the diagnostic and other objective medical evidence . . . failed to show a physiological basis for the extreme pain and limitation alleged." (AR 19–20.) The Court shall address each reason, in turn.

**B.     Daily Activities**

Plaintiff first argues that the ALJ's rationale relating to Plaintiff's activities of daily living is not a valid clear and convincing reason for the ALJ's adverse credibility finding. (*See* Doc. 13 at 9–11.) The Court agrees with Plaintiff's position.

"One does not need to be 'utterly incapacitated' in order to be disabled," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), and "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citations omitted). "Only if the level of activity were inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility." *Reddick*, 157 F.3d at 722.

Here, the ALJ stated that Plaintiff's "described daily activities . . . are not limited to the extent one would expect" because Plaintiff reported (1) "needing no help with bathing, dressing, and grooming," (2) "that he could travel alone, manage money, prepare food for himself, and take his children to and from school," and (3) that he "spends the day mostly at home, sleeping, watching television, and doing a little yard work." (AR 19.) This rationale is deficient for two reasons.

First, the Ninth Circuit has noted that similar minimal daily activities have no bearing on a claimant's credibility. *See, e.g.*, *Vertigan*, 260 F.3d at 1050 ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Absent any further pertinent discussion in the ALJ's decision, the record reflects only that the ALJ impermissibly penalized Plaintiff's credibility due to Plaintiff's minimal efforts to lead a normal life.

Second, the ALJ failed to describe how these tasks are transferrable to a work setting. "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting

*Fair*, 885 F.2d at 603); *see, e.g.*, *Fair*, 885 F.2d at 603 ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."). *See generally Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 495 F.3d at 639 (alteration in original) (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

In this case, the ALJ failed to describe how Plaintiff's minimal physical activities occupied a substantial part of his day, or provide any discussion, whatsoever, as to how those activities are transferable to a work setting. (*See* AR 15–20.) The ALJ's failure to address the minimal extent of these activities and whether they are transferable to a work setting demonstrates that the ALJ's credibility determination regarding Plaintiff's daily activities is not supported by substantial evidence. *See, e.g.*, *Orn*, 495 F.3d at 639 (finding that substantial evidence did not support the ALJ's conclusion regarding the claimant's credibility where "there [was] neither evidence to support that [the claimant's] activities were transferable to a work setting nor proof that [the claimant] spent a substantial part of his day engaged in transferable skills").

Based on the foregoing, the Court finds that the ALJ's stated rationale pertaining to Plaintiff's activities of daily living is not a valid clear and convincing reason for the adverse credibility determination.

**C.     Work History**

Plaintiff next argues that the ALJ's rationale relating to Plaintiff's work history is not a valid clear and convincing reason for the adverse credibility finding. (*See* Doc. 13 at 13.) The Court disagrees with Plaintiff's position on this point.

"An ALJ is required to consider work history when assessing credibility." *Matthews v. Berryhill*, Case No. 1:16-cv-00536-SKO, 2017 WL 3383118, at *12 (E.D. Cal. Aug. 7, 2017) (citing 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling ("SSR") 95-7p). "Evidence of a poor work history that suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that he is unable to work." *Franz v. Colvin*, 91 F. Supp. 3d 1200, 1209 (D. Or. 2015) (citing *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *see, e.g.*, *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) ("An ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination." (collecting cases)). However, a claimant's work history does not support a negative credibility determination if the claimant "experience[d] pain and limitations severe enough to preclude him from maintaining substantial gainful employment." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).

Here, Plaintiff reported earning typically well in excess of $10,000 per year between 1997 and 2004, but then suffered a dramatic decrease in earnings after 2004—including no earnings, at all, in 2005, 2007, and 2008. (*See* AR 231.) Additionally, Plaintiff does not assert—and the record does not otherwise indicate—that Plaintiff's dramatic decrease in gainful employment after 2004 was due to his disability or disability related pain. (*See* Doc. 13 at 13.) Plaintiff's poor work record is therefore a valid clear and convincing reason for an adverse credibility finding. *See, e.g.*, *Matthews*, 2017 WL 3383118, at *12 ("Evidence of a poor work history is a clear and convincing reason to discredit [a] plaintiff's credibility." (citations omitted)).

Plaintiff nonetheless argues that his work history does not support an adverse credibility finding because the construction industry "fell on rough times," Plaintiff's "earnings nose dive [sic] right around the time that the housing bubble burst in the mid 2000s," and Plaintiff's business "suffered bankruptcy." (Doc. 13 at 13.) In other words, Plaintiff argues that economic factors outside of his propensity or motivation to work precluded his opportunity to engage in gainful employment. (*See id.*)

The Court disagrees with this argument for two reasons. First, an ALJ is allowed to make an adverse credibility finding based on a claimant's work history where the claimant lost their

previous employment due to reasons that were not related to their disability. *See, e.g.*, *Drouin v. Sullivan*, 966 F.2d 1255, 1258–59 (9th Cir. 1992) (finding that the ALJ did not err by discounting the plaintiff's credibility because, in part, the plaintiff "did not lose her past two jobs because of pain"); *Caldwell v. Comm'r of Soc. Sec.*, No. 2:15-cv-1002-KJN, 2016 WL 4041331, at *6 (E.D. Cal. July 26, 2016) (finding that "the ALJ reasonably relied on [the] plaintiff's work record in discounting her credibility" where "there [was] evidence suggesting that [the] plaintiff had stopped working for reasons not related to her impairments"); *Clark v. Colvin*, No. C13–0747–JCC, 2013 WL 6095842, at *3 (W.D. Wash. Nov. 20, 2013) (finding that the ALJ did not err in finding the claimant's "subjective complaints . . . less credible" based on the claimant's work history where the claimant's "job ended for economic reasons instead of impairment-related reasons"). As Plaintiff's assertions regarding the reasons for his lack of gainful employment are not related to his impairments, the ALJ reasonably relied on Plaintiff's poor work history in making an adverse credibility finding.

Second, it is well-established that the Court "may not 'second-guess' the ALJ's credibility finding simply because the evidence may have been susceptible of other interpretations more favorable to Plaintiff." *Matthews*, 2017 WL 3383118, at *12 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). Here, the reason for Plaintiff's poor work history could be conditions in the national economy, as asserted by Plaintiff, (*see* Doc. 13 at 13), or a lack of motivation from Plaintiff in finding employment, as found by the ALJ, (*see* AR 20). Ultimately, "[w]hile it is true that factor(s) other than a lack of propensity to work could account for Plaintiff's" poor work history, the Court shall not second-guess the ALJ's credibility determination based on Plaintiff's alternative explanation for his work record. *Matthews*, 2017 WL 3383118, at *12.

For these reasons, the Court finds that the ALJ provided a valid clear and convincing reason for an adverse credibility finding based on Plaintiff's poor work record.

**D.     Conservative Treatment**

Defendant argues that substantial evidence supports the ALJ's credibility determination due, in part, to the ALJ's discussion regarding Plaintiff's history of conservative treatment, (*see*

13

Doc. 16 at 7–8)—an issue that Plaintiff failed to address in his briefing, (*see* Doc. 13). The Court agrees with Defendant's position.

"The treatment [a claimant] received, especially when conservative, is a legitimate consideration in a credibility finding." *McKnight v. Comm'r of Soc. Sec.*, Case No.: 1:12-cv-00726-AWI-JLT, 2013 WL 12073218, at *2 (E.D. Cal. Sept. 30, 2013) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999)). Thus, "[a]n ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain." *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1225 (E.D. Cal. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1433–34 (9th Cir. 1995)); *see, e.g.*, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." (citation omitted)). In other words, "[t]he conservative nature of [a] plaintiff's treatment provides a clear and convincing reason for rejecting [a] plaintiff's statements concerning the severity of her impairments." *Bifarella v. Colvin*, 51 F. Supp. 3d 926, 935 (E.D. Cal. 2014) (citing *Parra*, 481 F.3d at 751).

Here, the ALJ made an adverse credibility finding because, in part, Plaintiff's treatment history was inconsistent with Plaintiff's statements regarding his limitations. (*See* AR 19.) Specifically, the ALJ noted that there was (1) "no history of hospitalizations, surgeries, complicated medication regimen, therapy, or any other extraordinary treatment," and (2) "no psychiatric hospitalizations, no history of suicide attempts, no history of outpatient treatment, no history of psychotherapy, and no history of psychosis or manic episodes." (AR 19.) Plaintiff has not argued that he received anything other than conservative treatment, (*see* Doc. 13), and the Court is not otherwise aware of any indication in the record that Plaintiff received more than conservative treatment. As such, the Court finds that the ALJ reasonably relied on Plaintiff's conservative treatment in discounting Plaintiff's credibility. *See, e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (finding that the ALJ did not err in making an adverse credibility finding where the ALJ stated, in part, that "the claimant has not participated in any significant pain regimen or therapy program"); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding that the ALJ did not err in making an adverse credibility finding because, in part, the

claimant "alleged persistent and increasingly severe pain and discomfort," but "denied having received more than rather minimal conservative treatment for his various complaints"); *see also* 20 C.F.R. § 416.929(c)(3)(iv)–(v) (noting that, in evaluating credibility, the Commissioner will consider "[t]he type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms" and "[t]reatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms"). *But see Kuharski v. Colvin*, No. 2:12–cv–01055–AC, 2014 WL 3385183, at *4 (E.D. Cal. July 10, 2014) ("[T]he ALJ's reliance on the lack of hospitalization is unreasonable and does not constitute a clear and convincing reason for rejecting [a] plaintiff's credibility regarding his mental limitations." (citations omitted)). The Court therefore also finds that Plaintiff's history of conservative treatment constitutes a valid clear and convincing reason for the ALJ's adverse credibility finding. *See, e.g.*, *Bifarella*, 51 F. Supp. 3d at 935 ("The conservative nature of [a] plaintiff's treatment provides a clear and convincing reason for rejecting [a] plaintiff's statements concerning the severity of her impairments." (citing *Parra*, 481 F.3d at 751)).

**E.     Objective Evidence**

Plaintiff's final argument is that the ALJ's stated rationale relating to the objective medical evidence is not a valid clear and convincing reason for the adverse credibility finding. (*See* Doc. 13 at 11–13.) The Court again disagrees with Plaintiff's position.

"[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Ondracek v. Comm'r of Soc. Sec.*, Case No. 1:15-cv-01308-SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (alteration in original) (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)); *see, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence . . . ."); *see also* SSR 96-7p ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely

15

because they are not substantiated by objective medical evidence."). Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Here, the ALJ discounted Plaintiff's credibility because, in part, "the diagnostic and other objective medical evidence . . . failed to show a physiological basis for the extreme pain and limitation alleged." (AR 19.) Contrary to Plaintiff's assertion, (*see* Doc. 13 at 11–12), the ALJ provided ample support for this conclusion, including an extensive discussion regarding the relevant medical evidence during the course of the RFC analysis,[2] (*see* AR 15–19). As the ALJ fully explored the pertinent medical evidence relating to the credibility determination, the Court finds that the ALJ's stated rationale pertaining to the objective medical evidence is a valid clear and convincing reason for the ALJ's adverse credibility finding.[3] *See, e.g.*, *Bifarella v. Colvin*, 51 F. Supp. 3d 926, 934–35 (E.D. Cal. 2014) (finding that the ALJ's rationale relating to an inconsistency between the plaintiff's statements and the objective medical evidence was a valid clear and convincing reason for an adverse credibility finding where the ALJ addressed the pertinent evidence and reached an "interpretation of the objective evidence [that] was reasonable"); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding that the "ALJ gave specific, clear and convincing reasons for discounting [the claimant's] testimony"

---

[2] The Court notes that Plaintiff does not argue that the ALJ failed to discuss any pertinent medical evidence in the ALJ's decision. (*See* Doc. 13 at 11–13.)

[3] Plaintiff also argues that the ALJ employed the incorrect standard when determining whether Plaintiff's subjective statements were consistent with the objective medical evidence. In particular, Plaintiff argues that the ALJ improperly "rel[ied] on objective evidence" regarding "the degree of limitation," while Plaintiff only had to "show that it could reasonably have caused some degree of symptom." (Doc. 13 at 12 (citation omitted).)

The Court disagrees with Plaintiff's position. The standard proffered by Plaintiff—only a showing of some degree of symptom—is the appropriate standard at the *first* stage of the credibility analysis. *See, e.g.*, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). As noted above, the ALJ found that Plaintiff satisfied this stage. (*See* AR 16.) Plaintiff's objections to the ALJ's decision pertain to the *second* stage of the credibility analysis, in which "the ALJ can reject the claimant's testimony about the severity of her symptoms by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). The Court is therefore not persuaded by Plaintiff's argument regarding the standard employed by the ALJ when making the credibility determination.

1  where the ALJ found, in part, that "no objective medical evidence" supported the claimant's
2  "descriptions of her pain and limitations").

3  In summary, the Court finds that the ALJ gave three valid clear and convincing reasons for
4  the adverse credibility finding—Plaintiff's poor work record, his history of conservative treatment,
5  and inconsistencies between Plaintiff's subjective statements and the objective medical evidence.
6  These reasons readily constitute substantial evidence in support of the ALJ's credibility
7  determination.  *See, e.g.*, *Matthews v. Berryhill*, Case No. 1:16-cv-00536-SKO, 2017 WL
8  3383118, at *10 (E.D. Cal. Aug. 7, 2017) (finding that the ALJ's three valid reasons for an
9  adverse credibility finding—the plaintiff's "conservative treatment history," "poor work history,"
10 and "evidence in the record that conflicted with [the plaintiff's] allegation[s]"—constituted
11 substantial evidence in support of the ALJ's credibility determination).  While the ALJ erred in
12 providing one invalid reason for the credibility finding—Plaintiff's activities of daily living—that
13 error was harmless, as substantial evidence still supports the ALJ's credibility determination
14 notwithstanding the single errant rationale.  *See, e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533
15 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the
16 ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's
17 ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal."
18 (alterations in original) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th
19 Cir. 2004))); *Matthews*, 2017 WL 3383118, at *10 ("[B]ecause the ALJ articulated permissible
20 reasons for discounting [the plaintiff's] credibility, specifically [the plaintiff's] conservative
21 treatment history, [the plaintiff's] poor work history, and evidence in the record that conflicted
22 with [the plaintiff's] allegation of total disability, . . . this error was harmless." (citations omitted)).
23 The Court therefore finds that the ALJ's decision is properly affirmed.
24 //
25 //
26 //
27 //
28 //

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's Motion, (Doc. 13), GRANTS Defendant's Motion, (Doc. 16), and AFFIRMS the final decision of the Commissioner. The Court DIRECTS the Clerk to enter judgment in favor of Defendant.

IT IS SO ORDERED.

Dated: **August 22, 2017**      /s/ *Sheila K. Oberto*
                                UNITED STATES MAGISTRATE JUDGE